J-S50030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.F.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.C., NATURAL FATHER | : | |
| | : | |
| | : | No. 780 WDA 2019 |

Appeal from the Order Entered March 12, 2019
In the Court of Common Pleas of Jefferson County Orphans' Court at
No(s): 11A-2018-O.C.

BEFORE:  LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:  **FILED NOVEMBER 07, 2019**

C.C. (Father) appeals from the order involuntarily terminating his parental rights to his minor child, A.F.F. (Child), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b).  After careful review, we affirm.

Child was born in September 2011 to A.M. (Mother) and Father, although the relationship did not last.  ***See*** N.T., 6/13/18, at 6.  Father had two other children who were half-siblings of Child.  ***Id.***  Mother began a relationship with B.M. (Stepfather) in 2014, and the two were married in August 2016.  Mother subsequently gave birth to Child's half-sibling, D.M.  ***Id.*** at 5-6, 14-15-20, 48-51.  Mother, Stepfather, Child, and D.M. continue to live together as a family, and Child looks to Stepfather as her father.  ***Id.*** at 5-6, 15-19, 38-39, 48-51.

---

[*] Retired Senior Judge assigned to the Superior Court.

Father had contact with Child, despite the fact that he was incarcerated three times between 2011 and 2018, and hospitalized in 2013 for issues related to medication adjustment for his mental illness. *Id.* at 18, 51-52, 91-92, 113-16. Child and Father had several visits while Father was incarcerated. *Id.* at 18, 94-95, 99-100. However, Father has had no contact with Child since April 2017, and, shortly thereafter, he was arrested in New York State on drug-related offenses. *Id.* at 10-14. On May 23, 2017, while Father was incarcerated, an emergency custody order was entered. *Id.* at 6. Father claimed that he never received the emergency custody order, although the order was served at his mother's residence, Father's last known address. *Id.* at 8, 108-09, 130-33.

Child stopped asking about Father around December 2017. *Id.* at 27. During his most recent incarceration, Father telephoned his two other children, but did not telephone Child. *Id.* at 11, 28, 88. Mother testified that Father did not send Child gifts, letters, cards or support; however, paternal grandfather testified that Father sent him letters, which he read to Child.[1] *Id.* at 11, 28, 61-66. Child never expressed a desire to write to Father. *Id.* at 70. Paternal grandfather continued to see Child during Father's incarceration, every 30 to 45 days for two or three hours; however, the visits ceased when Mother discovered he had been taking Child to see her half-siblings. *Id.* at 22, 36-37, 55-58.

_____

[1] Six letters, dated July 2017, August 2017, October 2017, December 2017, January 2018, and May 2018, were admitted to the record. *Id.* at 66-67.

Father was released from jail in April 2018, and resides in a homeless shelter in Bath, New York, while awaiting admission to a halfway house. *Id.* at 90-91. Father is on New York state parole, and probation in Jefferson County, Pennsylvania. *Id.* at 101.

On March 14, 2018, Mother and Stepfather filed a petition seeking the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). A number of continuances were granted, and the court held a hearing on the petition on June 13, 2018. Gina Bianco, Esquire, served as Child's guardian *ad litem*. Mother; maternal grandfather (J.F.); and Stepfather testified in support of the petition. Father, represented by counsel, testified on his own behalf. Additionally, Father presented the testimony of paternal grandfather, C.C.; father's sister, N.C.; and Father's former paramour and the mother of Child's half siblings, C.R.

On July 9, 2018, the court terminated Father's parental rights. Father timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On December 19, 2018, this Court remanded the matter to the trial court so that Child's attorney could determine Child's preferred outcome. *See In re A.F.F.*, 203 A.3d 333 (Pa. Super. 2018) (unpublished memorandum).

On remand, the court appointed Keith Strano Taylor, Esquire, to serve as Child's attorney. On March 1, 2019, Attorney Taylor sent the court correspondence indicating that Child's preference was consistent with Child's best interests, as indicated by Attorney Bianco. The letter specifically stated

that Child would like to have the same last name as D.M., so "we can be a family," and noted that although Child knew Father was her biological father, she viewed Stepfather as her father. The letter misidentified Father's last name, mistakenly using Mother's maiden name. On March 14, 2019, by order dated March 12, 2019, the court terminated Father's rights.

On May 6, 2019, Father's counsel filed a motion for leave to file a notice of appeal *nunc pro tunc*, averring that Father desired to appeal, but that "inexplicably," counsel failed to file the notice of appeal. *See* Motion, 5/6/19, at 1. Counsel argued that Father should not be penalized for counsel's failure. *Id.* On May 14, 2019, the court granted the motion, and thereafter, Father timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father raises the following issues for our review:

I. WHETHER THE LOWER COURT ERRED IN TERMINATING [FATHER'S] PARENTAL RIGHTS WHERE INSUFFICIENT EVIDENCE WAS PRESENTED TO MEET THE BURDEN REQUIRED UNDER 23 PA.C.S.A. § 2511(a)(1)?

II. WHETHER THE LOWER COURT ERRED IN TERMINATING [FATHER'S] PARENTAL RIGHTS WHERE INSUFFICIENT EVIDENCE WAS PRESENTED TO MEET THE BURDEN REQUIRED UNDER 23 PA.C.S.A. § 2511(a)(2)?

III. WHETHER THE LOWER COURT ERRED IN TERMINATING [FATHER'S] PARENTAL RIGHTS WHERE INSUFFICIENT EVIDENCE WAS PRESENTED TO MEET THE BURDEN REQUIRED UNDER 23 PA.C.S.A. § 2511(b)?

IV. WHETHER THE LOWER COURT ERRED IN CONSIDERING A SUBMISSION FROM THE ATTORNEY FOR THE CHILD, WHERE SAID SUBMISSION DOES NOT ADDRESS THE CHILD'S POSITION

RELATIVE [TO HER NATURAL FATHER], AND MISIDENTIFIES SAID
NATURAL FATHER[?]

Father's Brief at 4.

We review cases involving the termination of parental rights as follows:

The standard of review in termination of parental rights cases
requires appellate courts to accept the findings of fact and
credibility determinations of the trial court if they are supported
by the record. If the factual findings are supported, appellate
courts review to determine if the trial court made an error of law
or abused its discretion. A decision may be reversed for an abuse
of discretion only upon demonstration of manifest
unreasonableness, partiality, prejudice, bias, or ill-will. The trial
court's decision, however, should not be reversed merely because
the record would support a different result. We have previously
emphasized our deference to trial courts that often have first-hand
observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations

omitted).

Further, termination requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party
seeking termination must prove by clear and convincing evidence
that the parent's conduct satisfies the statutory grounds for
termination delineated in Section 2511(a). Only if the court
determines that the parent's conduct warrants termination of his
or her parental rights does the court engage in the second part of
the analysis pursuant to Section 2511(b): determination of the
needs and welfare of the child under the standard of best interests
of the child. One major aspect of the needs and welfare analysis
concerns the nature and status of the emotional bond between
parent and child, with close attention paid to the effect on the child
of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The relevant subsections of 23 Pa.C.S.A. § 2511 provide:

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

With regard to Section 2511(a)(1), this Court has observed:

To meet the requirements of this section, "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." **In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008) (citing **In re Adoption of R.J.S.**, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and

child" before moving on to analyze Section 2511(b). *Id*. (quoting *In re Adoption of Charles E.D.M.*, 550 Pa. 595, 708 A.2d 88, 92 (1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 580 Pa. 687, 859 A.2d 767 (2004)). Rather, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id*. (citation omitted). Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817, 828 (2012) (discussing *In re Adoption of McCray*, 460 Pa. 210, 331 A.2d 652 (1975)).

*In re J.T.M.*, 193 A.3d 403, 409 (Pa. Super. 2018).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *See In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.* Further, "evidence concerning a parent's ability to care for another child is irrelevant

- 7 -

and inadmissible in a proceeding to terminate parental rights with regard to the child at issue." *In re A.L.D.*, 797 A.2d 326, 338 (citations omitted).

With regard to a parent's incarceration, in *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court reiterated the standard pursuant to section 2511(a)(1) for abandonment, and added:

> [a]pplying [*In re: Adoption of McCray*,] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." [460 Pa. 210, 217, 331 A.2d 652, 655]. We observed that the father's incarceration made his performance of this duty "more difficult." *Id.*
>
> * * *
>
> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*In re Adoption of S.P.*, 47 A.3d at 828, *quoting* *In re: Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975) (footnotes and internal quotation marks omitted). Further, the Supreme Court stated, "incarceration neither compels nor precludes termination of parental rights." *In re Adoption of S.P.*, 47 A.3d at 828 (adopting this Court's statement in *In re Z.P.*, 994 A.2d 1108, 1120 (Pa. Super. 2010)).

In ***In re Adoption of S.P.***, our Supreme Court addressed Section 2511(a)(2), and concluded:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

***Id.*** at 328-29, 47 A.3d at 828; ***see also In re D.C.D.***, 105 A.3d 662, 675 (Pa. 2014) (holding that incarceration prior to the child's birth and until the child was at least age seven renders family reunification an unrealistic goal and the court was within its discretion to terminate parental rights "notwithstanding the agency's failure" to follow court's initial directive that reunification efforts be made). The Court in ***S.P.*** additionally stated:

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S.[A.] § 2511(a)(2). ***See e.g. Adoption of J.J.,*** [511 Pa. 590, 605,] 515 A.2d [883, 891 (1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [***In re***] ***E.A.P.,*** 944 A.2d [79, 85 (Pa. Super. 2008)](holding termination under § 2511(a)(2) was supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

***S.P.***, 47 A.3d at 830 (footnote omitted).

Instantly, Father argues that the evidence was not clear and convincing to support the termination of his parental rights pursuant to Section 2511(a)(1) and (2). Father's Brief at 7. Father contends that he has not abandoned Child, and states that "he has a plan to improve himself and return to Pennsylvania and parent and support his child." *Id.* at 14.

Pertinently, the trial court recounted:

Father has been in and out of jail during [Child's] life. Despite this, there is no doubt that he had a positive relationship with [Child], until this last jail term which started in April of 2017.

Turning to the time period in question, dating from April 2017, [F]ather's only contact has been through a number of letters he sent to his daughter by way of paternal grandfather, [C.C]. These letters were regularly shared with the child. During prior incarcerations, [M]other was in touch with [F]ather, even taking the child to visit him in jail settings. This continued up until [M]other became very involved with [Stepfather].

Thereafter, [M]other ceased visits with [F]ather, and gradually restricted paternal grandfather's time with [Child]. All contact was stopped by [M]other and her family when the present proceeding commenced.

Father could have telephoned [Child] as he did his other children, but did not do so. He could have made efforts to contact [Child] directly, but failed to do so even though he knew how to contact [M]other and her family. For example, during much of this time, he was in contact with his father who was seeing [Child] regularly. His excuses are not credible.

. . .

Here, [F]ather wrote a number of letters, perhaps one a month. He did no more. Without much effort or expense, he could have had much more of a role in [Child's] life. Thus, the [c]ourt must conclude that [F]ather failed to perform parental duties for a period in excess of six months.

- 10 -

Trial Court Opinion, 7/9/18, at 3-4.

We find no error in the court's reasoning and its order terminating Father's rights pursuant to Section 2511(a)(1) and (2). During Father's incarceration, while Father occasionally wrote letters, he did nothing more. There is no indication Father attempted to arrange visits with Child, call Child, or contact Mother to request visitation with Child. Father made no attempt to modify the custody order or petition the court for visitation. Significantly, as of the date of the hearing, Father had had no contact with Child since 2017.

Additionally, Father is on parole in New York and did not indicate or provide further proof of when he would complete his supervision. Indeed, Father indicated that he would soon be living in a New York halfway house rather than returning to Pennsylvania. The record is not clear as to Father's timeline for returning to Pennsylvania. Thus, contrary to his assertion that he has remedied his parental incapacity, the record reflects that such incapacity remains.

Consistent with the foregoing, we discern no error in the trial court's finding that competent, clear and convincing evidence supported the termination of Father's parental rights pursuant to Section 2511(a)(1) and (2), based upon Father's failure to perform his parental duties and his continued incapacity – namely, his lack of attempts to contact and maintain a relationship with Child, and his failure to remedy the conditions leading to Child's placement – that resulted in Child being without essential parental

- 11 -

care, the cause of which "cannot or will not be remedied." *See Lilley*, 719 A.2d at 330; *Z.P.*, 994 A.2d at 1117.

Next, we consider whether Child's needs and welfare will be met by termination pursuant to Subsection (b). *See Z.P.*, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.*

We have stated:

[b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Z.P.*, 994 A.2d at 1121 (quoting *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000)). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her

parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Father argues that the court erred in terminating his rights under Subsection (b) because the court ignored the relationship between Child and Father's family, including Child's paternal grandfather, paternal aunt, and Child's half-siblings. The trial court observed:

> Whatever limited bond there was has been broken by [F]ather's failure to act and be a substantial part of [C]hild's life. [Child] is only 6 years old, and [F]ather has been absent for much of her life. She has a very positive relationship with her stepfather who plans to adopt her and [Stepfather] meets all of [Child's] needs.
>
> In term[s] of post abandonment contact, [F]ather has done little beyond opposing the present petition. No direct letters, gifts, cards, and the like have been forthcoming. He is essentially homeless and hopes to live in a New York State halfway house. While [F]ather must be recognized for trying to get his own life together, the [court's] ultimate focus is on [C]hild. [C]hild cannot wait for [F]ather to solve all of his own problems.

Trial Court Opinion, 7/9/18, at 4-5.

The record supports the trial court's disposition. We note that the law is not concerned with parental relatives, but the bond between Child and Father. ***See***, *e.g.*, ***T.S.M.***, 71 A.3d at 267 (noting that needs and welfare requires consideration of emotional bonds between parent and child). In this case, the court appropriately analyzed the evidence and concluded that Father has not acted to maintain the bond, and Stepfather provides for Child's needs and welfare. The record reflects that Child does not ask about Father, was

not interested in contacting him, and does not often speak of him. Rather, Child wishes to be adopted by Stepfather. Accordingly, we discern no abuse of discretion in the trial court's conclusion that Child's needs and welfare are best served by termination.

Finally, Father argues that the court erred in terminating his parental rights where Child's attorney filed a letter that misidentified Father's last name when indicating that Child wanted to be adopted by Stepfather. Father's Brief at 16. Counsel identified Father by Mother's maiden name. *Id.* However, it is clear from the record that this was a typographical error, where the letter was otherwise accurate as to Father, and conveys Child's position with regard to Father and adoption — that while Child knows Father is her biological father, she views Stepfather as her father in "all of the ways that matter," including being there for her on a day-to-day basis. *See* Letter, 3/1/19, at 1. Child did not evidence any hesitation or remorse, although she expressed a desire to see Father's two children who are her half-sisters. *Id.* Mother offered assurances that play dates had been arranged for Child to see her sisters. *Id.* Thus, the court appropriately considered the letter.

In sum, clear and convincing evidence supports the trial court's termination of Father's parental rights under Section 2511(a)(1) and (2), as well as its Section 2511(b) finding that any bond between Child and Father is outweighed by the fact that adoption would best serve Child's needs and welfare. *See Z.P.*, 994 A.2d at 1126-27; *K.Z.S.*, 946 A.2d at 763.

Order affirmed.

Judge Lazarus joins the memorandum.

Judge Colins concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/19