J-S59016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: E.D.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.H., FATHER | No. 2103 EDA 2019 |

Appeal from the Decree Entered June 28, 2019
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
No. 2018-A9119

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED DECEMBER 04, 2019**

E.H. (Father) appeals from the decree granting the petition filed by D.L. (Mother) and her husband, R.J. (Stepfather), seeking to involuntarily terminate Father's parental rights to E.D.L. (the Child), born in September 2012, pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1) and (b).  We affirm.

The trial court summarized the relevant evidence as follows:

> Mother . . . and Father . . . are the biological parents of [the Child.[fn1]]  The Child was born . . .  in Middlesex County, New Jersey.  At the time of the Child's birth, Mother and Father were in a romantic relationship and living together.  Mother and Father separated in November of 2012.  The Child currently resides with Mother and [Stepfather]
>
> > [fn1] [The Child's] name at birth was E.D.H.  In 2014, a name change was granted at which time [the Child]'s name was changed to E.D.L.

Father has not seen the Child in person since November of 2012.[fn2] On November 3, 2012, Mother and Father took the Child to his two-month pediatrician appointment. Upon returning home from the appointment, Father left the residence and never returned. Mother later found out that Father moved to Florida.

> [fn2] The parties stipulated to the fact that Father has not seen the Child in person since November of 2012.

Soon after Father moved to Florida, Mother filed for custody of the Child in Middlesex County, New Jersey, where she continued to reside. On December 17, 2012, following a hearing, Mother was granted full legal and physical custody. Father did not appear for the hearing, but participated by telephone.

Between November of 2012 and February of 2013, Father remained in contact with Mother through e-mail correspondence. Mother testified that the e-mails were mainly arguments "back and forth." In February of 2013, Mother filed a restraining order as a result of alleged threatening e-mails she received from Father. Mother testified that Father had also threatened to abduct the Child and push on the "soft spot" of his head.[fn3] The restraining order was temporary and remained in effect for twelve weeks.

> [fn3] Father denies the allegations contained in Mother's petition for a restraining order.

In 2014, Mother filed for a name change on behalf of the Child in Middlesex County, New Jersey. Father objected to the name change and again did not appear for the hearing, but participated by telephone. Mother's petition for a name change on behalf of the Child was granted and the Child's name was changed from E.D.H. to E.D.L.

In 2015, Mother filed a petition for relocation in Middlesex County, New Jersey. Mother filed the petition with the intent to relocate to Bucks County. On September 26, 2015, Mother's request for relocation was granted. Shortly thereafter, Mother moved to Bucks County with the Child and [Stepfather]. Mother, [Stepfather] and the Child have continued to reside in Bucks County since the relocation was approved. The five-year-old [c]hild of Mother and [Stepfather] also lives in the home, and [Stepfather]'s two daughters from a previous relationship live in the home every other weekend.

Father has not contacted Mother regarding the Child since 2014. Mother testified that the last contact she had with Father prior to the filing of the petition for the involuntary termination of Father's parental rights was in 2014[,] when he requested pictures of the Child. Mother testified that she has never blocked Father's telephone number, that she has not changed her e-mail address, and that Father was provided with her address as a result of various court proceedings. Mother testified that [although Father paid $23 each week in child support,] she never received any birthday cards, gifts, or mail from Father for the Child. Mother also testified that, to her knowledge, Father has never filed for custody.[fn4]

> [fn4] Father testified that he filed for custody after receiving the petition for the involuntary termination of his rights and approximately two weeks before this matter was scheduled for an evidentiary hearing.

Father has been unemployed since 1998 as the result of being involved in two accidents. In 1993, Father was involved in a motor vehicle accident that caused injuries to his back. In 1995, Father fell off of a ladder. Father testified that he underwent over twenty surgeries as a result of the accidents. Father is presently on Social Security disability.

Following Father's accidents, he was prescribed Klonopin, Elavil, Oxycodone, and Zanaflex. Father testified that he was prescribed Elavil for depression, Klonopin for anxiety, and Oxycodone for pain. Father acknowledged that he has suffered from mental health problems in the past. Specifically, Father testified that he suffered from high levels of anxiety and depression. Mother testified that Father told her he had previously overdosed on prescription medication, had threatened to commit suicide on another occasion, and was committed to a psychiatric facility. Father denies Mother's allegations. Additionally, Father denies that he has ever struggled with substance abuse despite Mother's allegations that he abused his prescription medication and did not take it as directed.

Trial Ct. Op., 8/12/19, at 1-4 (record citations and some capitalization omitted).

Mother and Stepfather filed a petition to terminate Father's parental rights on September 17, 2018.[1]  An evidentiary hearing was scheduled for February 19, 2019, at which time Father appeared without counsel and expressed that he wished to contest the petition.  The hearing was continued, and the trial court appointed counsel to represent Father on April 9, 2019.

The trial court held an evidentiary hearing on June 14, 2019.  Mother and Stepfather testified in support of the petition.  Father, represented by counsel, testified on his own behalf.  Francine Kaplan, Esq., represented the Child as both guardian *ad litem* (GAL) and legal counsel.[2]

The trial court terminated Father's parental rights in a decree dated June 18, 2019, and entered on June 28, 2019.  Father timely filed a notice of

---

[1] Stepfather filed a petition to adopt the Child on October 10, 2018.

[2] The trial court initially appointed Attorney Kaplan as GAL and then as legal counsel.  Therefore, the Child's right to counsel under 23 Pa.C.S. § 2313(a) was satisfied.  *See In re Adoption of K.M.G.*, ___ A.3d ___, 2019 PA Super 281, 2019 WL 4392506 (Sept., 13, 2019) (*en banc*) (holding that (1) "this Court's authority is limited to raising *sua sponte* the issue of whether the orphan's court violated Section 2313(a) by failing to appoint **any** counsel for the Child in a termination hearing," and (2) we may not "review *sua sponte* whether a conflict existed between counsel's representation and the child's stated preference in an involuntary termination of parental rights proceeding" (citations omitted) (emphasis in original)).  We add that there was no apparent conflict between the Child's best interests and legal interests.  *See id.*; *see also In re T.S.*, 192 A.3d 1080, 1089-90, 1092-93 (Pa. 2018) (reaffirming the ability of an attorney-guardian *ad litem* to serve a dual role and represent a child's non-conflicting best interests and legal interests); *In re Adoption of L.B.M.*, 161 A.3d 172, 174-75, 180 (Pa. 2017) (plurality) (stating that, pursuant to 23 Pa.C.S. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, defined as a child's preferred outcome).

appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a Rule 1925(a) opinion.

Father raises the following issues for review:

1. Did the trial court err in terminating [Father's] parental rights when it was established that [Father] had suffered from numerous physical and emotional maladies in the years preceding termination, which prevented [Father] from maintaining a more active role in [the Child's] life?

2. Did the trial court err in terminating [Father's] parental rights when it was established that [Father] was receiving disability, had limited financial means to actively participate in [the Child's] life, and where [Father] made attempts to participate in every court proceeding pertaining to [the Child's] custody and name change?

Father's Brief at 4 (some capitalization omitted).

In both of his issues, Father argues that he has continually suffered from physical and psychological conditions that have impacted his life and ability to maintain a relationship with the Child. *See id.* at 16. He maintains that he was physically unable to see Child due to his numerous surgeries and medical requirements. *Id.* He further asserts that his psychological issues prevented him from functioning as a parent. *Id.* Father notes that his financial situation limited his ability to travel from Florida to New Jersey to visit the Child, and he insists that he attempted to keep in contact with Mother and send cards gifts for the Child. *Id.* at 18. Father contends that he is now able to maintain a relationship with the Child. *Id.*

Our review is governed by the following standards:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotations omitted).

The termination of parental rights requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation omitted).

Here, we initially focus on the trial court's analysis under Section 2511(a)(1).

Section 2511(a)(1) provides:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1).

"A court may terminate parental rights under Section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child **or** fails to perform parental duties for at least the six months prior to the filing of the termination petition." ***In re Z.P.***, 994 A.2d 1108, 1117 (Pa. Super. 2010) (emphasis in original). Our Supreme Court has held,

[o]nce the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

***Matter of Adoption of Charles E.D.M., II***, 708 A.2d 88, 91 (Pa. 1998) (citation omitted); ***accord In re J.T.M.***, 193 A.3d 403, 409 (Pa. Super. 2018).

It is well settled that:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

This Court has noted that

we may not consider any effort by the parent to remedy the conditions described in subsection (a)(1) . . . if that remedy was initiated after the parent was given notice that the termination petition had been filed. Further, this evidentiary limitation applies to the entire termination analysis. The court, however, may consider post-petition efforts if the efforts were initiated before the filing of the termination petition and continued after the petition date.

*Z.P.*, 994 A.2d at 1121. Further,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re B., N.M.***, 856 A.2d at 855 (citations omitted).

Here, the trial court observed:

It is well established that a parent must take affirmative steps to maintain a relationship with his or her child to the best of his or her ability under the circumstances. Here, Father clearly failed to establish and maintain a place of importance in the Child's life. Father himself acknowledged that he could have made more of an effort to be involved in the Child's life. After 2014, Father did not attempt to make contact with the Child. We heard testimony from Mother that she did not change her e-mail address, [that] she did not change her telephone number or block Father's telephone number, and that Father was aware of the address of the home in which she and the Child have continuously resided for nearly five years. While Father testified that he sent cards for the Child every year, Mother testified that she did not receive any mail from father.

Although Father moved to Florida when the Child was two months old, he could have attempted to remain in contact with the Child despite the distance. Father testified that he moved back to New Jersey in May of 2018 because he "wanted to spend time" with the Child and "wanted to be a father." Notably, however, Father did not even attempt to reach out to Mother to inform her that he had moved back to New Jersey or that he wanted to see the Child. This [c]ourt cannot now accept Father's vow to be present as a Father after his prolonged absence in the Child's life and his failure to maintain any contact with the Child. Accordingly, we find that [Mother and Stepfather] proved by clear and convincing evidence that grounds for termination under Section 2511(a)(1) existed for Father's failure to perform parental duties.

Trial Ct. Op. at 7-8 (record citations omitted).

As to Father's explanation for his conduct and post-abandonment contact with the Child, the trial court explained:

Father argues that he suffered from "numerous physical and emotional maladies in the years preceding termination" that prevented him from having an active role in the Child's life. We accept Father's testimony that he is disabled, has undergone many surgeries, and suffered from anxiety and depression.

- 9 -

However, we did not hear any evidence of how Father's physical limitations or emotional issues interfered with Father's ability to remain in meaningful contact with the Child. Furthermore, a majority of Father's testimony related to his physical and emotional issues between the years 2008 and 2014. Father testified that beginning in 2014, he was "doing better" physically. Thus, while his physical disability may have prevented Father from playing a role in the Child's life from 2012 to 2014, it does not explain Father's failure to attempt to be involved, or even contact the Child, in the years immediately prior to the filing of the [p]etition. Father also testified that he had improved emotionally over the past year or two and that he stopped taking medication for anxiety and depression in May of 2018. While Father's emotional issues may have prevented him from playing a role in the Child's life for several years, it is by Father's own admission that his condition had improved for at least the year preceding termination and that he did not make an effort to see or contact the Child during that time.

Next, Father argues that he had limited financial means to actively participate in the Child's life. While we heard testimony that Father is on Social Security disability and was unable to afford transportation to New Jersey from Florida, the [c]ourt is not satisfied that Father's financial limitations prevented him from maintaining basic contact, such as e-mailing or calling to ask about the Child or to speak to the Child, as the Child got older.

Regarding any post-abandonment contact between Father and the Child, Father seems to argue that his participation in the New Jersey custody and name change proceedings is demonstrative of his attempt to remain in contact with the Child. We acknowledge that Father participated in the custody proceedings and the name change proceedings. However, between the most recent custody hearing in 2015 and the filing of [the petition], Father did not make any attempt to file for custody. It was not until Father was in receipt of [the petition] that he filed for custody. As such, Father's participation in the name change proceeding and the custody proceedings in New Jersey is not demonstrative of an attempt to participate in the Child's life so as to overcome his otherwise total lack of involvement in the Child's life over the course of six years, and most critically, over the six-month period preceding the filing of the [p]etition.

**See** Trial Ct. Op. at 8-9 (record citations and footnote omitted).

- 10 -

Following our review, we see no reason to disturb the trial court's determination. *See T.S.M.*, 71 A.3d at 267. The evidence supported the trial court's determination that Father did not perform parental duties in the six months prior to the filing of the petition. *See Z.P.*, 994 A.2d at 1117; *B., N.M.*, 856 A.2d at 855. Moreover, we find no abuse of discretion or error of law in the trial court's consideration of Father's explanations for his conduct or the trial court's finding that Father failed to maintain contact with the Child after Father moved to Florida. *See J.T.M.*, 193 A.3d at 409. Accordingly, we affirm the trial court's conclusion that the termination of Father's parental rights was appropriate under Section 2511(a)(1). *See T.S.M.*, 71 A.3d at 267.

We next consider the trial court's ruling under Section 2511(b). Initially, we note that that Father did not preserve a challenge to the trial court's ruling under Section 2511(b) in his statement of errors complained of on appeal or his statement of questions involved on appeal. *See* Pa.R.A.P. 1925(b), 2116(a). Additionally, Father discusses Section 2511(b) only in passing in his brief. *See* Father's Brief at 19 (arguing that "it would decidedly be against the Child's best interest to deny [the Child] the opportunity to have a relationship with his natural father that is now, for the first time, truly possible"). While we could conclude that Father has waived this issue, *see M.Z.T.M.W.*, 163 A.3d 462, 466 & n.3 (Pa. Super. 2017), we will consider the

trial court's ruling under Section 2511(b).  **See In re C.L.G.**, 956 A.2d 999,

1009 (Pa. Super. 2008) (*en banc*); **Z.P.**, 994 A.2d at 1121.

Section 2511(b) states in relevant part:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

This Court has stated that the focus in terminating parental rights under

Section 2511(a) is on the parent, but the focus of Section 2511(b) is on the

child.  **See C.L.G.**, 956 A.2d at 1008.  In reviewing the evidence in support of

termination under Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S. § 2511(b).  The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability."  In **In re E.M.**, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child.  The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

**T.S.M.**, 71 A.3d at 267 (some citations omitted).

When evaluating a parental bond, "the court is not required to use

expert testimony.  Social workers and caseworkers can offer evaluations as

well.  Additionally, Section 2511(b) does not require a formal bonding

evaluation."  **Z.P.**, 994 A.2d at 1121 (citations omitted).  Further, "in cases

where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." ***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010) (citation omitted).

Instantly, the trial court determined that there was no evidence of a bond between Father and the Child. ***See*** Trial Ct. Op. at 12. The record supports the trial court's finding. The parties stipulated that the last time Father saw the Child in person was November 2012, when the Child was two months old. N.T., 6/14/19, at 6. Mother testified that the Child does not ask about Father and considers Stepfather to be his parent in all respects. ***Id.*** at 13, 94. Father admitted that the Child would not know who he was, and that his re-entry into the Child's life would potentially be a shock to the Child. ***Id.*** at 137.

Moreover, the record supports the trial court's finding that Mother and Stepfather have attended to the needs and welfare of the Child, and that the Child shares a strong bond with Stepfather. ***See*** Trial Ct. Op. at 11; N.T. at 13, 94-95. Stepfather is committed to adopting the Child. ***See*** N.T. at 99. The Child's GAL and legal counsel further indicated that the Child is very happy at Mother and Stepfather's home, that the Child and is clearly bonded to Stepfather, and that termination was in the Child's best interests. ***Id.*** at 179-82.

Following our review, we find no error of law or abuse of discretion in the trial court's analysis of the Child's needs and welfare. There was clear and

convincing evidence that there was no bond between Father and the Child, and that the Child was in a loving and stable home with Mother and Stepfather. The trial court recognized that Father expressed an interest in resuming his parental duties, but considered all relevant factors to determine that the termination of Father's parental rights would best serve the needs and welfare of the Child. Therefore, we agree with the trial court that Mother and Stepfather established the grounds for terminating Father's parental rights under Section 2511(b). *See T.S.M.*, 71 A.3d at 267.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/19