J-S39044-17

2018 PA Super 202

| IN RE: J.T.M., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.L.M., NATURAL | : | |
| FATHER | : | No. 367 WDA 2017 |

Appeal from the Decree February 7, 2017
In the Court of Common Pleas of Blair County
Orphans' Court at No(s):  2016 AD 52-A

BEFORE:   BENDER, P.J.E., BOWES, and STRASSBURGER*, JJ.

OPINION BY STRASSBURGER, J.:                    **FILED JULY 11, 2018**

B.L.M. (Father) appeals from the decree entered February 7, 2017, in the Court of Common Pleas of Blair County, which terminated involuntarily his parental rights to his minor son, J.T.M. (Child), born in June 2000.[1]  We affirm.

The record reveals that Blair County Children, Youth and Families (CYF) has a lengthy history of involvement with Child, dating back to 2012. N.T., 1/25/2017, at 7.  Child entered foster care on January 28, 2016, due to allegations that Mother was neglecting the medical needs of Child's half-sister, and due to allegations that Mother took the children with her to

_____

* Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court entered a separate decree on February 9, 2017, confirming the consent of Child's mother, N.K. (Mother), and terminating her parental rights.  Mother did not file a Brief in connection with this appeal, nor did she file her own separate appeal.

purchase "illicit substances."  Application for Emergency Protective Custody, 1/28/2016, at 3.  Father was not available to care for Child at that time, as he had been incarcerated since approximately 2014.  N.T., 1/25/2017, at 39.  Child was adjudicated dependent by order entered February 17, 2016.[2]

On December 8, 2016, CYF filed a petition to terminate Father's parental rights to Child involuntarily.  The orphans' court conducted a termination hearing on December 20, 2016, January 25, 2017, and February 6, 2017.  Following the hearing, on February 7, 2017, the court entered a decree terminating Father's parental rights.  Father timely filed a notice of appeal on February 22, 2017, along with a concise statement of errors complained of on appeal.

Father now raises the following issues for our review.

I. Whether a remand is necessary, in order to appoint counsel for the child?

II. Whether the evidence is sufficient to show that the Father abandoned his [p]arental [r]ole?

III. Whether the evidence establishes that [] Father is incapable of providing parental care[?]

Father's Brief at 6 (orphans' court answers omitted).

We review Father's issues mindful of our well-settled standard of review.

_____

[2] Aggravated circumstances were found as to Father on September 21, 2016, due to Father's failure to maintain contact.  Child's permanency goal was changed to adoption by a separate order entered that same day.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

In his first issue, Father argues that the orphans' court erred by failing to appoint counsel to represent Child's legal interests pursuant to 23 Pa.C.S. § 2313(a) and our Supreme Court's recent holding in *In Re Adoption of L.B.M.*, 2017 Pa. LEXIS 1150, 2017 WL 2257203 (Pa. 2017). Father acknowledges that Child had the benefit of a guardian *ad litem* (GAL) during the termination proceedings, but contends that "the statutory requirement for 'counsel' in a contested termination case is not satisfied by the appointment of a GAL[.]" Father's Brief at 11.

Initially, we observe that Father did not raise this claim before the orphans' court, and failed to include it in his concise statement of errors complained of on appeal. Under normal circumstances, this would result in waiver. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (citations

- 3 -

omitted) ("[A]ny issue not raised in a statement of matters complained of on appeal is deemed waived.").

However, Father contends that this claim cannot be waived, and directs our attention to *In re Adoption of G.K.T.*, 75 A.3d 521 (Pa. Super. 2013). In that case, the appellant father argued that the orphans' court erred by failing to appoint counsel for G.K.T. pursuant to Section 2313(a). *Id.* at 525-26. We held that the appellant did not waive this claim, even though he failed to raise it before the court. *Id.* at 526. We explained, "The right to counsel belongs to the child, and there is no appointed counsel for the child who could have raised the child's rights in the proceedings before the [orphans'] court." *Id.* (quoting *In re E.F.H.*, 751 A.2d 1186, 1189 (Pa. Super. 2000)).

Applying *G.K.T.* to the facts of this case, we agree that Father cannot waive Child's right to counsel. Therefore, we proceed to address the merits of this issue. Section 2313(a) provides as follows.

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

In *L.B.M.*, our Supreme Court held that Section 2313(a) requires courts to appoint counsel to represent the legal interests of any child

- 4 -

involved in a contested involuntarily termination proceeding. 2017 Pa. LEXIS 1150 at 16; 2017 WL 2257203 at 6. The Court explained that a child's legal interests are distinct from his or her best interests, in that a child's legal interests are synonymous with the child's preferred outcome, and a child's best interests must be determined by the court. 2017 Pa. LEXIS 1150 at 2-3; 2017 WL 2257203 at 1.

Importantly, the justices disagreed on whether an attorney who serves as a child's dependency GAL can also serve as that child's counsel during contested involuntary termination proceedings. In the Court's lead opinion, Justice Wecht, joined by Justices Donohue and Dougherty, opined that a child's legal interests cannot be represented by his or her dependency GAL. 2017 Pa. LEXIS 1150 at 16-19; 2017 WL 2257203 at 7. However, the Court's remaining four justices disagreed with that portion of the lead opinion, and opined in a series of concurring and dissenting opinions that a child's dependency GAL may serve as his or her counsel, so long as the GAL's dual role does not create a conflict of interest. 2017 Pa. LEXIS 1150 at 23-47; 2017 WL 2257203 at 9. Thus, in this case, we conclude that the orphans' court was not required to appoint a separate attorney to represent Child's legal interests, so long as Child's GAL was an attorney, and so long as Child's legal and best interests did not appear to be in conflict.

Upon review, it is clear that Child's legal interests and best interests were aligned throughout the termination proceedings. During the hearing, on December 30, 2016, Child informed the orphans' court that he did not

want to be placed in Father's care, and that he hoped to live in a foster home and be adopted after leaving his current residential treatment facility. N.T., 12/30/2016, at 18.[3] Child's GAL, Gary A. Caldwell, Esquire, argued on behalf of Child's position during the hearing, and filed a brief before this Court supporting the termination of Father's parental rights. Thus, Attorney Caldwell represented both Child's articulated legal interest and what Attorney Caldwell viewed as Child's best interests. Since these interests were aligned, no conflict existed that would warrant the appointment of separate legal counsel for Child. Therefore, no remand is necessary.[4]

We next consider Father's second and third issues, in which he argues that the orphans' court abused its discretion by terminating his parental rights. Termination of parental rights is governed by Section 2511 of the

---

[3] As the orphans' court noted in its 1925(a) opinion, "The subject child has specifically indicated through his direct testimony in court, and through his treating therapists, that he does not want to live with … Father or have any contact with him." Orphans' Court Opinion, 3/3/2017, at 10.

[4] The author of this Opinion dissented in **L.B.M.** to opine that the language of Section 2313(a) "suggest[ed] that the legislature intended to differentiate between legal counsel and GAL in TPR proceedings," and favored remand for a new hearing with the appointment of legal counsel because "the difference between the child's interests and the best interest of the child is staggering, and it is readily apparent that a GAL appointed to represent the [children's] interests in the dependency proceedings cannot advocate effectively on the [children's] behalf with respect to issues raised surrounding the TPR and adoption without creating a conflict." **In re: Adoption of L.B.M.**, 2016 WL 3080124 at *34 (Pa. Super. May 31, 2016) (unpublished) (Strassburger, J., dissenting). The author agrees with the position taken by Justice Wecht in the Supreme Court's Opinion, but is bound to follow the reasoning of the four justices as discussed above.

Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Sections 2511(a)(1), (2), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a) in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Sections 2511(a)(1), which provides as follows.[5]

---

[5] In his concise statement of errors complained of on appeal, statement of questions involved, and in the argument section of his Brief, Father challenges the termination of his parental rights pursuant to Section 2511(a)(1) and (2). Father does not raise any challenge as to the termination of his parental rights pursuant to Section 2511(b). Therefore, we conclude that Father preserved a challenge as to Section 2511(a) only, and that any challenge as to Section 2511(b) is waived. *See In re M.Z.T.M.W.*, 2017 Pa. Super. LEXIS 360, 2017 WL 2153892 (Pa. Super.
*(Footnote Continued Next Page)*

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1).

To meet the requirements of this section, "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." ***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) (citing ***In re Adoption of R.J.S.***, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze Section 2511(b). ***Id.*** (quoting ***In re Adoption of Charles E.D.M.***, 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development

*(Footnote Continued)* —————

2017) (holding that the appellant waived her challenge to Section 2511(b) by failing to include it in her concise statement and statement of question involved, and that the appellant abandoned any challenge to Section 2511(a)(2) and (5)).

- 8 -

of the child." ***In re B.,N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (quoting ***In re C.M.S.***, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)). Rather, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." ***Id.*** (citation omitted). Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. ***In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012) (discussing ***In re Adoption of McCray***, 331 A.2d 652 (Pa. 1975)).

In the instant matter, the orphans' court found that Father refused and/or failed to perform his parental duties, as Father did not make reasonable efforts to remain a part of Child's life. Orphans' Court Opinion, 3/3/2017, at 16. The court explained that Father sent a single letter to Child during his dependency. ***Id.*** While Father had his sister contact Child on his behalf, this contact was "very limited." ***Id.***

Father argues that he visited with Child regularly prior to his incarceration in 2014. Father's brief at 13. Father further argues that he attempted to maintain contact with Child following his incarceration by sending letters and cards, and by having family members contact Child on

his behalf. *Id.* Father emphasizes that Child's former foster mother prevented him from contacting Child starting in March 2016, and that the order adjudicating Child dependent prevented Father from having visits with Child after his release. *Id.*

The record supports the findings of the orphans' court. During the termination hearing, the court heard the testimony of Child, who participated via telephone from his residential treatment facility. Child informed the court that he last saw Father "[a]bout two years ago." N.T., 12/20/2016, at 17. Child explained that Father was not actually caring for him at that time, but that he was only seeing Father "here and there." *Id.* Child recalled that he has not seen Father since his incarceration, and that his last contact with Father was a letter sent to the home of his former foster mother, W.D. (Foster Mother). *Id.* at 16-17.

In addition, CYF presented the testimony of Foster Mother. Foster Mother testified that Child resided in her home from January 28, 2016, until July 29, 2016. N.T., 2/6/2017, at 36. Concerning Father's attempts at contacting Child, Foster Mother testified that Child received a single letter from Father. *Id.* at 39. In addition, Father's sister called Foster Mother's home "once possibly twice," and sent Child a letter along with a box of Easter candy. *Id.* at 37, 39. Foster Mother acknowledged that she did not provide the letters to Child, nor she did allow Father's sister to speak with Child on the phone. *Id.* at 39-40, 42. Foster Mother explained that she was

- 10 -

advised by Child's therapist in March 2016 that Child should not have any contact with his biological family.[6] *Id.* at 36, 41-42.

Concerning Father's contact with CYF, the orphans' court heard the testimony of caseworker, Paige McCarthy. Ms. McCarthy testified that Father contacted CYF in April 2016, but that he had no further contact between then and January 2017.[7] N.T., 1/25/2017, at 16. Ms. McCarthy explained that Father was released from incarceration and resided at a halfway house from April 2016 until May 31, 2016. *Id.* at 17. Father absconded from the halfway house on May 31, 2016. *Id.* On September 1, 2016, Ms. McCarthy was notified that Father had been taken back into custody. *Id.* Father was then incarcerated until October 31, 2016, at which time he was paroled once again to a halfway house. *Id.* at 18-19. Father left Ms. McCarthy a

_____

[6] Our review of the record reveals that the court entered a series of orders during Child's dependency, directing that Father would not be permitted to have contact with Child unless that contact was approved by Child's therapist. *See, e.g.,* Permanency Review Order, 6/27/2016, at 9 ("The father shall be permitted contact with [Child] only as may be deemed therapeutically appropriate by [Child's] therapist.").

[7] A permanency review order, entered June 27, 2016, provides the following description of Father's contact with CYF:

> [T]he father contacted the Agency on 3/9/16 and reported that he had been released from SCI-Forest and wanted to visit his son. He also called on 3/31/16 for an update about his son. On 4/4/16, he came to the Agency office with his power-of-attorney and reported that he was receiving drug and alcohol treatment . . . . The father has not maintained any further contact with the Agency, nor his son, nor any of the service providers.

Permanency Review Order, 6/27/2016, at 2.

voicemail and/or e-mail in January 2017, indicating that he no longer was residing at the halfway house. *Id.* at 5, 19.

Thus, the record confirms that Father refused or failed to perform parental duties for the six months immediately preceding the filing of CYF's termination petition on December 8, 2016. The record establishes that Father has had no direct contact with Child since approximately 2014. While Father made an effort to contact Child indirectly by sending a letter to Child's foster home, and by having his sister try to contact Child on his behalf, these efforts were minimal. Further, it does not appear from the record that Father made any effort to contact Child at all after Child left Foster Mother's home in July 2016.

While it is unlikely that Father would have been allowed to speak with Child if he had tried to contact him more frequently, due to the prohibition put in place by Child's therapist, this does not excuse Father's failure to perform parental duties. This Court has stressed that a parent must exercise reasonable firmness in resisting the obstacles which limit his or her ability to maintain a parent/child relationship. *B.,N.M.*, 856 A.2d at 855. In this case, it is clear that Father made no effort to resist these obstacles. Most critically, Father failed to maintain contact with CYF. Father contacted CYF in April 2016, but then absconded from a halfway house and failed to contact CYF again until January 2017.

Accordingly, we conclude that the orphans' court did not abuse its discretion by terminating involuntarily Father's parental rights to Child pursuant to Section 2511(a)(1). Therefore, we affirm the court's February 7, 2017 decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/11/2018