J-S75045-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.S. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: B.C., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1522 WDA 2019 |

Appeal from the Decree Entered September 16, 2019
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  No. 2019-185 IVT

BEFORE:  STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    FILED FEBRUARY 4, 2020

B.C. (Father) appeals from the September 16, 2019 decree entered by the Court of Common Pleas of Cambria County (trial court) terminating his parental rights to his son, C.S. (Child).  After careful review, we affirm.

I.

We glean the following facts from the certified record.  At the time of the termination of parental rights hearing, Child was four-and-a-half years old and had been in foster placement through Cambria County Children & Youth Services (CYS) for approximately three years.  Notes of Testimony, 7/18/19, at 7, 10.  Child entered placement in August 2016 because his mother did not have safe or sanitary housing and struggled with drugs, alcohol and mental

_____

[*] Retired Senior Judge assigned to the Superior Court.

health.  Father was incarcerated due to an aggravated assault conviction since before Child's birth.

Once paroled, Father was instructed to obtain and maintain stable housing, comply with service providers, complete a drug and alcohol assessment and regular drug screens, and avoid further incarceration.  Father was initially released to a halfway house in October 2016, but he was reincarcerated because of parole violations from February to May 2017, from November 2017 to May 2018, and from June to December 2018.  While Father was on parole, it was difficult to schedule visitation with Child because his parole conditions prohibited him from entering Cambria, Allegheny and Somerset counties.  CYS had to schedule visitation with available out-of-county providers.  Father did meet and comply with service providers when he was not in prison.

During his release from incarceration in 2017, Father attended biweekly services that included parenting lessons and supervised visitation with Child. His caseworker believed that he had a good parenting style, but Father and Mother had a volatile relationship and were unable to parent together.[1] Another caseworker observed two of Father's visits with Child in 2017 and opined that Father had a good parenting style.  No caseworkers were able to

_____

[1] Father's reincarceration in November 2017 was due to an incident of domestic violence with mother.

observe and testify to Father's interactions with Child between November 2017 and February 2019.

Father visited Child seven times in 2017 and did not visit at all in 2018. He chose not to attend visitation while on parole in 2018 because there was an outstanding warrant for his arrest and he did not want to be arrested in front of Child. The CYS caseworker assigned to the case opined that while Father has a bond with Child, Child has never looked to Father as a parental figure since Father has not been available to fill that role. Child bonded significantly with his foster family while he was in their care.

While incarcerated, Father contacted Child through phone calls and letters. However, in the latter half of 2018, he went several months without calling Child from prison. Father testified that when he was residing in the halfway house, he would try to talk to Child on the phone twice a week. He testified that Child refers to him as "dad" or "daddy" during these calls and that they talk about Child's day, school or church activities. Notes of Testimony, 8/30/19, at 62. Father acknowledged that Child was happy and bonded with his foster mother. He admitted that he had never had custody of Child and that he would have to work toward overnight visits before he could take custody of Child.

Father was residing in a halfway house after release from prison for three months prior to the filing of the petition in February 2019. In that time, he spoke with Child on the phone but could not visit in person because his

- 3 -

parole conditions prevented him from entering Cambria County. Id. at 35-36. He saw Child once immediately before a court date in January 2019. Due to his periods of incarceration and Child's lengthy placement in foster care, Father has never parented Child independently.

On September 16, 2019, the trial court issued an order terminating Father's parental rights.[2] Father timely filed a notice of appeal and he and the trial court have complied with Pa.R.A.P. 1925.

## II.

On appeal, Father contends that the trial court abused its discretion in finding clear and convincing evidence to support the termination of his parental rights.[3] We disagree.

## A.

"The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [the subsections of 23 Pa.C.S. § 2511(a)]." In re Adoption of J.N.M., 177 A.3d 937, 942 (Pa. Super. 2018) (quoting In re

---

[2] The trial court also terminated Mother's parental rights and she did not file an appeal.

[3] Father does not argue that termination of his parental rights did not serve Child's best interests pursuant to 23 Pa.C.S. § 2511(b). See In re J.T.M., 193 A.3d 403, 408 n.5 (Pa. Super. 2018) (holding that appellant waived any challenge to the trial court's determination under Section 2511(b) by failing to raise it in his concise statement and brief).

L.M., 923 A.2d 505, 511 (Pa. Super. 2007)). Clear and convincing evidence is that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." In re D.L.B., 166 A.3d 322, 326 (Pa. Super. 2017) (citation and quotation marks omitted). The orphans' court may then enter a final decree of involuntary termination if it is in the child's best interests as outlined in Section 2511(b). Id.[4]

The trial court found clear and convincing evidence to terminate Father's parental rights pursuant to subsections 2511(a)(1), (2), (5), and (8). When reviewing a trial court's order terminating parental rights, we need only agree as to one subsection of Section 2511(a), as well as Section 2511(b), to affirm the order. In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). Accordingly, we proceed to our analysis of the trial court's findings under subsection 2511(a)(1).

_____

[4] We review such a decree for an abuse of discretion. In re G.M.S., 193 A.3d 395, 399 (Pa. Super. 2018) (citation omitted). Moreover, "[w]e give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings." In re Interest of D.F., 165 A.3d 960, 966 (Pa. Super. 2017). "We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." In re S.H., 879 A.2d 802, 805 (Pa. Super. 2005). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." In re A.S., 11 A.3d 473, 477 (Pa. Super. 2010). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." Id.

Subsection 2511(a)(1) provides that parental rights may be terminated if "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1) (emphasis added); see also In re C.M.S., 832 A.2d 457, 462 (Pa. Super. 2003). "Although the six month period immediately preceding the filing of the petition is most critical to the analysis, the court must consider the whole history of the case and not mechanically apply the six-month statutory provision." In re I.J., 972 A.2d 5, 10 (Pa. Super. 2009).

This court has defined "parental duties" as "a positive duty which requires affirmative performance" to meet the physical and emotional needs of the child. In re Adoption of N.N.H., 197 A.3d 777, 784 (Pa. Super. 2018) (internal quotations and citation omitted). Moreover,

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

Id. A parent's responsibilities are not tolled during incarceration. See In re Adoption of S.P., 47 A.3d 817, 828 (Pa. 2012) (discussing termination of parental rights under subsection 2511(a)(2)). Rather, we must inquire whether the parent has used those resources at his disposal while in prison to

continue a close relationship with the child. See id. If the evidence establishes a failure to perform parental duties, the trial court must then consider: "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." In re Z.S.W., 946 A.2d 726, 730 (Pa. Super. 2008) (citation omitted).

B.

Father contends that there was not clear and convincing evidence to support termination because, despite his incarceration, he made efforts to maintain his bond with Child through phone calls and letters. He also argues that he had obtained housing and employment when he was not incarcerated and that he demonstrated appropriate parenting skills during his limited supervised visits with Child.

In the six months prior to the filing of the petition in February 2019, Father visited with Child once, immediately before a court date. He did not visit with Child at all in 2018, even during the times when he was not incarcerated, because he was concerned about an outstanding parole violation warrant. While two caseworkers did testify that Father demonstrated appropriate parenting skills during supervised visits, these visits occurred in

2017, well before the six-month time period that is most relevant to the trial court's determination under subsection 2511(a)(1).[5]

During the relevant time, Father was unable to visit with Child because of his incarceration and parole restrictions prohibiting him from entering Cambria County.[6] When asked why he did not attempt to challenge these restrictions, Father testified that he had "no real reason" to be in Cambria County other than his court hearings and CYS meetings, which his parole officer gave him permission to attend. Notes of Testimony, 8/30/19, at 77. Thus, even though the restrictions limited his ability to see Child, he was not concerned with attempting to have them changed. This does not demonstrate reasonable firmness to overcome the obstacles preventing him from nurturing a parent-child relationship. See In re Adoption of N.N.H., supra.

_____

[5] While we acknowledge that the trial court must consider the entire history of a case, the six months immediately preceding the filing of the petition is "most critical to the analysis." In re I.J., 972 A.2d 5, 10 (Pa. Super. 2009).

[6] Father presented testimony from an employee of a foster care agency who supervised Father's monthly visitation with Child from March to August 2019. Notes of Testimony, 8/30/19, at 40-41. The witness testified that Father interacted appropriately with Child, was receptive to parenting advice, and implemented skills that he learned during these sessions. Id. at 41-42. However, these visits took place after the petition to terminate parental rights was filed. Our law is clear that "[w]ith respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." See 23 Pa.C.S. § 2511(b).

Father relies on a favorable psychological evaluation generated by a psychologist who works with CYS as evidence that he is a capable parent. The report indicated that Father was a "cooperative and pleasant individual who appeared committed to maintaining his recovery from substance/alcohol use and paying his own way in society." Notes of Testimony, 7/18/19, at 93. The psychologist concluded that Father had the ability to learn to be an appropriate parent to Child if he complied with treatment recommendations. Father points to this evaluation as evidence that he was able to perform parental duties but for the roadblocks to reunification created by his parole and incarceration.

However, this evaluation was conducted in June 2017. Over a year-and-a-half passed between the evaluation and the filing of the instant petition, and in that time, Father continued to violate parole and made minimal efforts to visit Child. As the psychologist noted, the evaluation measured potential, not performance. Id. at 95-96. In his testimony, Father failed to appreciate and address his own actions that led to his frequent periods of incarceration and prevented him from maintaining a parental relationship with Child. Father's performance in his relationship with Child was the defining factor in the trial court's determination that CYS had provided clear and convincing evidence for termination under subsection 2511(a)(1). The record is clear that Father failed to perform parental duties for much of Child's life.

By the time of the termination of parental rights hearings, Child had spent three years in foster placement. Father testified that he was not

immediately available to take custody of Child and would need to work towards overnight visits with Child. The trial court determined that while Father had taken some recent steps to achieve the stability he would need to be a parent to Child, he was not currently in the position to do so. Further, based on Father's history of incarceration and minimal compliance with his parenting goals, the trial court was not confident that Father could become an able and available parent in the near future. The trial court concluded that Child deserved permanence after spending the majority of his life in placement. These determinations are well-supported by the record and the trial court did not abuse its discretion in finding that CYS presented clear and convincing evidence to support termination of Father's parental rights.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/2020