J-S69017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.A.C.N., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: H.B.C., FATHER | : : : : : : | |
| | : | No. 1905 EDA 2019 |

Appeal from the Order Entered June 13, 2019,
in the Court of Common Pleas of Philadelphia County,
Family Court at No(s):  CP-51-AP-0000387-2019,
FID: 51-FN-004746-2011.

BEFORE:   SHOGAN, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:            **FILED FEBRUARY 11, 2020**

H.B.C. (Father) appeals the order terminating his parental rights to his two-year-old daughter, D.A.C.N. (Child), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and(b).[1]  We affirm.

The record discloses the following relevant factual and procedural history.  Child, born in February 2017, first came to the attention of the Philadelphia Department of Human Services (DHS) when Mother tested positive for phencyclidine (PCP) at the time of Child's birth.  At that time, Father was incarcerated.  DHS obtained a protective custody order and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court also terminated the parental rights of D.N. (Mother).  Her appeal is listed before a separate panel of this Court.

removed Child from Mother's care. At the ensuing shelter hearing, the court determined that Mother and Child were receiving in-patient treatment and reunified Child and Mother.

The case became active again in December 2017, following reports that the parents were using illicit drugs and that Father was verbally abusive. The latter incident triggered police intervention after Father threatened to kill everyone at the scene. DHS obtained a protective custody order, marking the last time Father had contact with Child. At the shelter hearing, the court referred Father to the clinical evaluation unit (CUA) for a drug screen. Father tested positive for marijuana and PCP. Child was adjudicated dependent on February 1, 2018.

Throughout the dependency case, Father never complied with Child's court-ordered permanency plan. Following the adjudication, the court referred Father to the Achieving Reunification Center (ARC) for appropriate services, but he failed to attend the intake evaluation. Although Father was referred to another drug test, he did not comply. The court also referred Father for parenting, housing, and financial services, and it further ordered Father to engage in dual diagnosis treatment. Father failed to participate with any of these programs.

In January 2019, Father was arrested on a bench warrant for a probation violation; he had been on probation following a 2015 guilty plea to burglary

and conspiracy. Father was sentenced to eleven and a half months to twenty-three months for the probation violation.[2]

On May 28, 2019, DHS filed termination and goal-change petitions. On June 13, 2019, the court conducted an evidentiary hearing. The court granted the petitions and terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b). Father presents this timely-filed appeal.

Father does not appeal the goal-change determination, nor does he contend that DHS failed to meet its burden under § 2511(b). Instead, Father raises the following issue for our review:

> Whether the trial court committed reversible error when it involuntarily terminated Father's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5) and (8).

Father's Brief at 4.

In reviewing an appeal from an order terminating parental rights, we adhere to the following principles:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id*.; *In re R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality). As has been often stated, an abuse of

---

[2] The record is unclear as to precisely when his sentence began.

discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel–Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re I.E.P.*, 87 A.3d 340, 343–344 (Pa. Super. 2014) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826–827 (Pa. 2012)).

At the termination hearing, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that the "standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without

hesitance, of the truth of the precise facts in issue.'" ***Id***. (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court has explained that the focus in terminating parental rights under section 2511(a) is on the parent, but under section 2511(b), the focus is on the child. ***In re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). As Father does not contest the second prong of the termination analysis under Section 2511(b), we will only address the first prong under Section 2511(a). Here, the court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5) and (8). We note that this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Thus, we may narrow our focus even further, confining our discussion to subsections (a)(2), which provides:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Our Supreme Court established a three-part test when terminating a parent's rights under Section 2511(a)(2). The petitioner must satisfy the following criteria:

(1) A parent's repeated and continued incapacity, abuse, neglect or refusal must be shown; (2) such incapacity, abuse, neglect or refusal must be shown to have caused the child to be without essential parental care, control or subsistence; and (3) it must be shown that the causes of the parent's incapacity, abuse, neglect or refusal cannot or will not be remedied.

*See In re A.D.*, 93 A.3d 888, 896 (Pa. Super. 2014) (citing *In re Geiger*, 331 A.2d 172, 173-174 (Pa. 1975)).

The trial court found that DHS established clear and convincing evidence warranting the termination of Father's rights:

Throughout the time that Child has been in the custody of DHS, Father's [reunification] goals were dual diagnosis, random drug screens, domestic violence [], and to make outreach to CUA. […] Father never provided any documentation that showed he successfully completed any type of domestic violence program. Father completed intake at ARC on February 26, 2018, but did not engage and complete the parenting, housing, and financial counseling programs. […] Father also indicated that he only completed drug and alcohol while incarcerated, but failed to complete the mental health component of his dual diagnosis objective. Father admitted that between the adjudicatory hearing in April 2018[3] and his incarceration in January 2019, Father never attempted to engage in dual diagnosis services. [At the time of the shelter hearing], Father completed the only random drug screen for the life of the case. Father has not been in contact with CUA since April

---

[3] We note that the adjudication hearing occurred in February 2018. The first permanency review occurred in April 2018.

- 6 -

> 2018. Father acknowledged that he failed to maintain contact with CUA. […] During the life of the case, Father has not visited Child. Father's visitation was suspended in April 2018 and has remained suspended for the life of the case. Father has been incarcerated since January 2019. Father indicated that the sentence he was given for the violation of probation was between eleven and a half months to twenty-three months. Father indicated that he does not have housing arranged for his release from prison. Father was aware of his objectives and that his visitation would be reinstated if he engaged in his objectives, but Father refused to comply.

T.C.O., 9/11/19, at 7-8 (citations to the record omitted).

On appeal, Father acknowledges his failure to comply with the permanency plan, but notes that he completed a drug program while in prison. The crux of his argument is that he has attempted to utilize all available resources while in prison. **See** Father's Brief at 13.

Although not a litmus test, a parent's incarceration is relevant to the Section 2511(a)(2) analysis and, depending on the circumstances of the case, a petitioner may use incarceration as evidence of a parent's inability to provide the "essential parental care, control or subsistence" that the section contemplates. **See In re A.D.**, 93 A.3d at 897 (citing 23 Pa.C.S.A. § 2511(a)(2)). Incarceration does not relieve a parent of the obligation to perform parental duties. **In re J.T.M.**, 193 A.3d 403, 409 (Pa. Super. 2018). Rather, an incarcerated parent must "utilize available resources to continue a relationship" with his or her child. **Id**. (quoting **In re Adoption of S.P.**, 47 A.3d 817, 828 (Pa. 2012)) (**supra**).

Here, Father claims that his completion of the prison program demonstrated that he utilized available resources, and so his rights should not be terminated under Section 2511(a)(2). He wants this Court to find that he parented as much as he was able. This argument blatantly ignores the prior eleven months between his incarceration and Child's dependency adjudication, when Father failed to comply with any part of the permanency plan – to say nothing of the preceding two months between the adjudication and Child's removal from the home, which was the last time Father sought to have contact with Child. It would be one thing if the record demonstrated that, prior to his incarceration, Father had ample ability to provide parental care, that he was able to maintain a relationship with Child while incarcerated, and that he would be able to resume parental care upon his imminent release. Instead, the record indicates the opposite. Father either refused to parent or was incapable of parenting before he went to prison, he has done next to nothing while incarcerated, and, notwithstanding his eventual release from prison, the conditions of the incapacity or refusal cannot or will not be remedied.

Accordingly, we conclude that the trial court did not abuse its discretion by terminating involuntarily Father's parental rights to Child pursuant to Section 2511(a)(2). Therefore, we affirm the court's order granting DHS's petition.

Order affirmed.

Judge Colins joins the memorandum.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/20