J-A02024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.S.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.A.S. AND B.K.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 899 WDA 2020 |

Appeal from the Order Entered July 28, 2020
In the Court of Common Pleas of Somerset County Orphans' Court at
No(s):  15 Adoption 2019

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: JUNE 2, 2021**

K.A.S. and B.A.S. (Maternal Grandparents) appeal from the order denying their petitions to involuntarily terminate the parental rights of K.S.D. (Mother) and J.K. (Putative Father) to K.S.D. (Child), born in July 2017.[1]  We affirm.

Mother resided with Maternal Grandparents from the time she was approximately six months pregnant with Child to shortly following Child's birth.  N.T., 7/23/20, at 16-17.  Maternal Grandmother testified that Mother

---

[1] Maternal Grandparents additionally filed a petition seeking to terminate the parental rights of Unknown Father.  Pet. for Termination of Parental Rights, 1/22/20.  The orphans' court, however, declined to rule on this petition.  N.T., 7/23/20, at 215, and entered a single order denying the petitions to terminate Mother's and Putative Father's parental rights.  Neither Mother nor Putative Father filed a brief in this appeal.

did not help care for Child and her basic needs and was often not home. *Id*.

at 21-22, 27-28. Maternal Grandmother stated:

> I mean she would be -- she was supposed to be living there, but you never knew where she was. We would go weeks; we could go months; and then in the middle of the night, I would wake up in the morning and there is always a note on my stove for money, for cigarette money. It was constant. We didn't know where she was.

*Id*. at 21-22. Maternal Grandfather confirmed Maternal Grandmother's

testimony. *Id*. at 88.

Moreover, Child was hospitalized from the time she was one-and-a-half

months old until two-and-a-half months old.[2] *Id*. at 20-21. Maternal

Grandmother reported that Mother did not participate in Child's care while

hospitalized. *Id*. at 26.

Mother subsequently left Maternal Grandparents' home in January 2018

with Child. *Id*. at 28, 88. Maternal Grandmother observed that Mother did

---

[2] According to Maternal Grandmother, Child was diagnosed with numerous medical conditions, including: (1) breathing issues; (2) aortapexy, described as a bent trachea with the aorta wrapped around it; (3) tracheomalacia; (4) bronchomalacia; seizures with concerns of a brain tumor; (5) ear issues; and (6) tongue issues. Child has undergone numerous surgeries, including open heart surgery, and "scopes." N.T., 7/23/20, at 19-22, 24, 52. Child was also scheduled to undergo biopsies of her stomach and bowels. *Id*. at 22. As a result, Child requires numerous medications, as well as physical therapy to loosen and release mucus from her chest, nebulizer treatments, and "pudding-thick liquids." *Id*. at 23, 51-52.

not have the ability to appropriately care for Child.[3]  *Id*. at 29.  Maternal Grandparents filed an emergency petition in custody on February 21, 2018, fearing for Child's safety due to Mother's drug use, Child's medical issues, and Mother's inability to appropriately care for Child.  *Id*. at 29-30, 88; Maternal Grandparents' Ex. A.  Maternal Grandparents received supervised visitation every other Saturday at 1:00 p.m. at McDonald's.  *Id*. at 35-36, 88.

Mother then returned to Maternal Grandparents' home and moved back in around Memorial Day.  *Id*. at 31, 88.  Maternal Grandmother expressed that Mother continued to fail to help with Child's care and did not provide financial assistance.  *Id*. at 32.  Maternal Grandmother indicated that she took Child to work with her and then to daycare because Mother was never home and could never be found.  *Id*. at 32-33.

After evicting Mother from the home due to drug use, Maternal Grandparents again filed for custody in September 2018.  *Id*. at 34, 38-39, 41-42, 88.  By an order of September 26, 2018, the court granted Maternal

---

[3] Notably, Maternal Grandmother was a certified nursing assistant (CNA) and, since 2004, has been a licensed practical nurse (LPN) with skills caring for special needs children and dealing with tracheotomies and ventilators.  *Id*. at 23.  Maternal Grandmother indicated that her background is very helpful in caring for Child.  *Id*.  Maternal Grandmother also testified that after Mother left the home in January 2018, Mother did not take Child to medical appointments.  Maternal Grandmother observed that Child lost weight and was wheezy when she saw her during that time.  *Id*. at 37.

Grandparents sole legal and physical custody of Child.[4]  *Id*.; Maternal Grandparents' Ex. C.

Maternal Grandparents commenced the instant termination of parental rights proceeding by filing a petition to terminate Mother's parental rights on August 29, 2019.  Maternal Grandparents alleged that Mother "evidenced a settled purpose of relinquishing parental claims to [Child] and had failed to perform parental duties" and that termination of her parental rights would best serve Child's needs and welfare.  Pet. for Termination of Parental Rights, 8/29/19, at ¶¶ 8, 9.  Maternal Grandparents thereafter filed petitions to terminate the parental rights of Putative Father, J.K., and an Unknown Father on January 22, 2020.[5]  As to Putative Father, Maternal Grandparents asserted that he also  "evidenced a settled purpose of relinquishing parental claims to [Child] and had failed to perform parental duties" and that termination of his parental rights would best serve Child's needs and welfare.  Pet. for Termination of Parental Rights of Putative Father, 1/22/20, at ¶¶ 7, 8.  As to Unknown Father, Maternal Grandparents sought termination citing Section

---

[4] Mother did not appear at the September 2018 hearing on Maternal Grandparents' petition for custody of Child.  The court permitted Mother to file a petition for modification.  Maternal Grandparents' Ex. C.

[5] While Putative Father acknowledged paternity of Child, Maternal Grandparents allege there are doubts as to whether he was Child's biological parent.  Putative Father did not undergo paternity testing by the time of the hearing on Maternal Grandparent's petition to terminate his parental rights. The orphans' court granted leave to publish notice of the filing of the petition against Unknown Father.

2511(a)(1), and (2). Pet. for Termination of Parental Rights of Unknown Father, 1/22/20, at ¶¶ 8, 9.

After several continuances, the orphans' court held a hearing on Maternal Grandparents' petitions on July 23, 2020. Maternal Grandparents and Mother were present and represented by counsel. Putative Father was neither present nor represented by counsel. No other individual appeared claiming paternity as father. Child was represented by a guardian *ad litem* (GAL)/legal counsel.[6] Maternal Grandmother, Maternal Grandfather, and Mother all testified on their own behalf.

At the conclusion of the hearing, the orphans' court denied Maternal Grandparents' petitions as to Mother and Putative Father, which the court memorialized by written order dated July 23, 2020, and entered July 28,

_____

[6] The orphans' court initially appointed Kimberly Hindman, Esq. to represent Child in the termination proceeding. At the hearing, given the lack of conflict between Child's best interests and legal interests, the orphans' court appointed Attorney Hindman as GAL. N.T., 7/23/20, at 9-11. The court stated, in part:

> Well, let me just say the statute requires that [Child] have legal counsel. It does not require the child to have a [GAL] in an involuntary termination proceeding. However, if the child's legal interests conflict with the child's best interests, then it would be necessary to have both a legal – legal counsel and a [GAL]. . . . Just let me enter an order appointing you as both. You're already legal counsel, but we'll appoint you also as [GAL] given that it does not appear that there's any conflict between [Child]'s legal interests and best interests.

*Id*. at 9-10 (some formatting altered). At the close of the hearing, Child's GAL/legal counsel argued that termination of Mother's parental rights was in Child's best interests. *Id*. at 204.

2020.[7]  The court declined to address the petition seeking termination of the parental rights of Unknown Father.  N.T., 7/23/20, at 215.

On August 21, 2020, Maternal Grandparents, through counsel, filed a timely notice of appeal, as well as concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  Thereafter, on September 1, 2020, the court filed a Rule 1925(a)(2)(ii) opinion referring to its reasoning placed on the record.

On appeal, Maternal Grandparents raise six issues, which we have reordered as follows:

1. Whether the [orphans'] court erred in declining to terminate the parental rights of Mother?

2. Whether the [orphans'] court erred in not finding by clear and convincing evidence that Mother had evidenced a settled purpose of relinquishing her parental rights or that she had failed or refused to perform parental duties for a period in excess of six (6) months?

3. Whether the [orphans'] court erred in declining to terminate the parental rights of Putative Father[]?

4. Whether the [orphans'] court erred in not finding by clear and convincing evidence that Putative Father[] had evidenced a settled purpose of relinquishing his parental rights or that he had failed or refused to perform parental duties for a period in excess of six (6) months?

5. Whether the [orphans'] court erred in declining to terminate the parental rights of the Unknown Father?

---

[7] Although Maternal Grandparents' petitions to terminate Mother's and Putative Father's parental rights did not cite a specific subsection of Section 2511(a), the orphans' court denied the petitions under Section 2511(a)(1) and (2).  *See* N.T., 7/23/20, at 215.

6. Whether the [orphans'] court erred in not finding by clear and convincing evidence that Unknown Father had evidenced a settled purpose of relinquishing his parental rights or that he had failed or refused to perform parental duties for a period in excess of six (6) months?

Maternal Grandparents' Brief at 4-5 (some formatting altered).[8]

We summarize Maternal Grandparents first two arguments together. Maternal Grandparents assert that the orphans' court erred in failing to find grounds for termination of Mother's parental rights pursuant to Section 2511(a)(1) because the record establishes that Mother failed to perform parental duties. Maternal Grandparents' Brief at 15. Maternal Grandparents note that Mother failed to seek and pursue custodial time through the custody matter. *Id*. They further point to Mother's failure to maintain contact and communication. *Id*. Maternal Grandparents state, "[Mother] has failed to utilize all available resources to preserve the parental relationship as from

_____

[8] While Maternal Grandparents make a broad sufficiency of the evidence argument, we find that they preserved a challenge as to Section 2511(a)(1) only. Maternal Grandparents failed to include discussion of subsections (a)(2) and (b) in their brief, such that they failed to preserve, and therefore waived, any challenge with regard to subsections (a)(2) and (b). *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (noting that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived" (citation omitted)); *see also In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017). Even if Maternal Grandparents did not waive their arguments under subsection (b), however, we need not engage in the subsection (b) analysis considering our discussion herein. *See In re P.Z.*, 113 A.3d 840, 850 (Pa. Super. 2015) (stating that only if the court determines that the parent's conduct warrants termination of his or her parental rights, does the orphans' court and the reviewing court engage in the second part of the analysis pursuant to Section 2511(b)).

September 17, 2018, through early July 23, 2020, [Mother] took no documented action or exerted any efforts to maintain contact with [C]hild other than sporadic text requests to see [C]hild." *Id*.

Maternal Grandparents also emphasize Mother's closing argument at the hearing, during which Mother's counsel suggested that Maternal Grandparents maintain custody of Child under the current custody order with the potential for Mother to seek a modification if her situation improves in the future. *Id*. at 16. Maternal Grandparents note the speculative nature of relying on Mother improving in the future. They further highlight that Mother's other child was removed from her custody by CYS, reflecting Mother's inability to provide for Child's needs. *Id*. at 16-17.

Likewise, in their third and fourth claims, Maternal Grandparents argue that Putative Father evidenced a settled purpose of relinquishing his parental claim to Child where he declined paternity testing and failed to appear for the termination proceeding, despite having notice of the hearing. *Id*. at 17. They further contend that he lacks skills to provide for Child's needs. *Id*. at 17-18.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will." *Id.* The

trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Our case law has made clear that under Section 2511, the [trial] court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the [trial] court determines that the parent's conduct warrants termination of his or her parental rights does the [trial] court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***B.J.Z.***, 207 A.3d at 921 (citation omitted). We have defined clear and convincing evidence as that which is "so clear, direct, weighty, and convincing as to enable the trier[-]of[-]fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re Z.P.***, 994 A.2d 1108, 1116 (Pa. Super. 2010) (citation omitted).

Here, the orphans' court denied Maternal Grandparents' petitions to terminate the parental rights of Mother and Putative Father based on Section 2511(a)(1) and (2). As discussed above, Maternal Grandparents failed to raise challenges to subsection (a)(2). Accordingly, we focus on their arguments under subsection (a)(1).

Section 2511(a)(1) provides:

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1).

"A court may terminate parental rights under Section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child **or** fails to perform parental duties for at least the six months prior to the filing of the termination petition." ***Z.P.***, 994 A.2d at 1117 (emphasis in original). As it relates to the six-month period prior to the filing of the petition, this Court has instructed:

- 10 -

[I]t is the six months immediately preceding the filing of the petition that is most critical to our analysis. However, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provisions, but instead consider the individual circumstances of each case.

*In re D.J.S.*, 737 A.2d 283, 286 (Pa. Super. 1999) (citations omitted). These principles require the orphans' court to "examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted).

Our Supreme Court has held that

[o]nce the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998) (citation omitted); *accord In re J.T.M.*, 193 A.3d 403, 409 (Pa. Super. 2018).

Instantly, in denying Maternal Grandparents' petitions to terminate Mother's and Putative Father's parental rights pursuant to Section 2511(a)(1), the orphans' court reasoned as follows:

All right, I have considered the testimony and evidence presented today. There has been an awful lot of conflicting testimony, which is typical in these kinds of cases. That requires me to weigh and assess the credibility of the witnesses.

The statute, being 23 Purdon's Section 2511(a) requires that the [c]ourt find by clear and convincing evidence that there are grounds for involuntary termination of parental rights. In this case, I believe the sections that arguably would be applicable would be Section 2511(a)(1) and Section 2511(a)(2).

Section 2511(a)(1) requires that the [c]ourt find, again by clear and convincing evidence, that the parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, either has evidenced a settled purpose of relinquishing parental claims to a child or has refused or failed to perform parental duties.

* * *

It's clear that [M]aternal [G]randparents have devoted their lives to [C]hild's care and upbringing, and I commend them for that, and it certainly has been a valiant effort given [C]hild's medical needs and special needs. However, I can't find clear and convincing evidence that [M]other has engaged in conduct that would fit in Section 2511(a)(1) . . .; and, again, the key is that it has to be clear and convincing evidence. It's one of the most strict standards under the law; and unless the [c]ourt can find that evidence clearly and convincingly, it is not within my authority to terminate someone's parental rights.

And I have to tell you that is one of the most important rights that a person can possess is the right to be a parent.

What concerns me is that there clearly is not a good relationship here between [Ma]ternal [G]randmother and [M]other. And I'm not pointing any fingers to who has caused that to occur, but what is clear to me is that[,] although [M]other has not been a stellar mother; she has not been there every day for her daughter; there is clearly evidence that she has, on many occasions, attempted to have contact with [Child]. And it appears that those requests were denied or ignored on many occasions.

That causes me to not be able to find clearly and convincingly that it's appropriate to terminate [M]other's rights at this time.

As I stated earlier, there's always conflicting evidence and varying testimony, but I find it somewhat concerning that there was testimony by [M]aternal [G]randmother that there was a significant period of time where [M]other didn't have any contact with [C]hild or didn't even hold [C]hild; but yet, there's

photographs that obviously contradict that. That prevents me from being able to find clear and convincing evidence that I should terminate [[M]other's parental rights.

Again, I stress that, ma'am [to Mother], you're -- you're not getting Parent of the Year clearly. You have a lot of work to do if you're ever going to rekindle your relationship with your daughter and your mother, but I don't find that we are at the point where I can clearly and convincingly say that her parental rights should be terminated under Section 2511(a)(1) . . . .

I don't find the settled purpose that's necessary for me to find that [M]other has abandoned her parental rights or has given up those parental rights.

Has she refused or failed to perform parental duties? Certainly, on occasion, but not to the level where her parental rights can be involuntarily terminated by this [c]ourt.

Have there been periods where [M]other has neglected or refused to be a parent or provide care to [C]hild? Yes, there are; but, again, I don't enter an [o]rder today terminating her parental rights.

Again, I commend [M]aternal [G]randparents for all that they are doing for [C]hild, and it is a noble effort and, clearly, it's what is in the best interests of [C]hild; but the more important question is whether or not there exists by clear and convincing evidence grounds -- statutory grounds for involuntary termination; and based on the record before me, I don't find that today.

So for that reason, I am denying the petition as it applies to [M]other.

With respect to [Putative Father], again, the [c]ourt must find by clear and convincing evidence his settled purpose to not be a father to [C]hild, and I think a strong case can be made out for that; but, again, we don't have a situation where he's been absent from child's life, haven't made an effort to see the child. He's provided very minimal financial assistance, but it doesn't boil down to dollars and cents.

What I will say is this: Based on the testimony that [Putative Father] doesn't oppose the petition, I think the more appropriate method would be for him to voluntarily relinquish his parental rights, if that is what he intends to do. But based on the record

that he has continuing one-time-per-week contact with the child; he's provided some financial support; he has still been part of the child's life, again, I don't find clearly and convincingly that I shouldn't involuntarily terminate his parental rights. If that's what he desires, he can file a [p]etition to [v]oluntarily [r]elinquish those rights, and I will certainly consider that, but I don't find sufficient evidence today to involuntarily terminate his rights.

At this point in time, with the allegations that he is the putative father, I'm not going to rule with respect to [U]nknown [F]ather because what I think we clearly need is a paternity test to rule out, one way or the other, whether [Putative Father] is or isn't the father. But we clearly have evidence before the [c]ourt that he is, and I don't have clear evidence that he isn't. So for this point in time, I'm treating him as the putative father.

Again, if he doesn't want that responsibility, he can have a paternity test taken to rule out conclusively whether he is or isn't the father, or he can file a [p]etition to [v]oluntarily [r]elinquish his [p]arental [r]ights.

N.T., 7/23/20, at 210-15.

Upon review, the record supports the findings of the orphans' court, including its credibility determinations. The orphans' court determined that Mother testified credibly in that she made numerous contacts to request visits with Child that Maternal Grandmother denied or ignored. *See* N.T., 7/23/20, at 106-14, 116-25, 127-71, 173, 179, 201-02; *see also* Mother's Exs. 1-4. Mother further stated that she provided some gifts and supplies. *Id*. at 140-41, 162, 170, 195-97; *see also* Mother's Ex. 4. Similarly, the orphans' court heard credible evidence that Putative Father maintained physical contact, visiting Child approximately once per week, and contributed some financial assistance to Maternal Grandparents, although minimal. *See* N.T., 7/23/20, at 93, 96-97. Accordingly, the record supports the orphans' court's conclusion that the termination of the parental rights of Mother and Putative Father was

not warranted pursuant to Section 2511(a)(1). Upon our review, we find no abuse of discretion, and therefore, we must defer to the orphans' court and will not disturb its findings.[9] *See T.S.M.*, 71 A.3d at 267 (citing *S.P.*, 47 A.3d at 826); *R.J.T.*, 9 A.3d at 1190; *see also Q.R.D.*, 214 A.3d at 239; *B.J.Z.*, 207 A.3d at 921.

In their final two claims, Maternal Grandparents argue that they established grounds for terminating the parental rights of any Unknown Father. These arguments lack merit because the orphans' court declined to render a decision without further proof that Putative Father was not Child's father.

Order affirmed.

Judge McLaughlin joins the memorandum.

Judge Bowes files a dissenting memorandum.

---

[9] As our Supreme Court has observed:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*S.P.*, 47 A.3d at 826-27 (citations omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/2/2021