J-S03006-25 & J-S03007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.J.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: M.M.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1152 WDA 2024 |

Appeal from the Decree Entered August 21, 2024
In the Court of Common Pleas of Armstrong County Domestic Relations
at No(s):  No. 19 of 2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.J.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.J.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1153 WDA 2024 |

Appeal from the Decree Entered August 21, 2024
In the Court of Common Pleas of Armstrong County Orphans' Court at
No(s):  No. 19 of 2024

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:              **FILED: May 7, 2025**

In these matters, A.J.T. (Father) and M.M.B. (Mother) appeal the decrees that terminated their parental rights to their daughter, D.J.T. (the Child), pursuant to the Adoption Act.  ***See*** 23 Pa.C.S.A. § 2511(a)(5) and (b). Because each parent's appeal raises similar issues and involves the same facts and circumstances, we address the parents' appeals together in one decision. After review, we affirm.

The pertinent facts and procedural history may be summarized as follows. The Child was born in August 2019. On August 10, 2023, Armstrong County Youth and Family Services (the Agency) received a referral alleging substance abuse by both parents. In May 2023, the Agency engaged the family in a three-month diversionary plan through Justice Works to hopefully avoid a safety plan and placement. This program, however, was unsuccessful because, on August 16, 2023, Mother submitted to a drug test and tested positive for crack cocaine. A safety plan was implemented. Two days later, however, the Agency filed an application for protective custody, which was granted, and the Child was removed from her parents' care.

The Child was adjudicated dependent on August 31, 2023, and the Child was placed in the pre-adoptive home of her Paternal Aunt. A permanency plan was developed and several permanency review hearings were held.

On April 23, 2024, the Agency filed a petition to terminate the parental rights of Mother and Father. At the time of this filing, the Child had been in placement for approximately eight months. An evidentiary hearing was held on August 19, 2024. Two of the Agency's caseworkers, a family resource specialist from Justice Works who supervised visits, and both Mother and Father testified. The guardian *ad litem* (GAL) was also present and informed the court that the Child's best interest did not conflict with her legal interest.[1]

_____

[1] Specifically, the GAL stated, "I don't see that there is any conflict between those two roles in this case. The child is four and a half years old. I think
*(Footnote Continued Next Page)*

- 2 -

She also informed the court that termination of the parental rights of both Mother and Father was in the Child's best interests.

On August 21, 2024, the orphans' court issued its factual findings and conclusions of law based on the evidence presented at the hearing, which we reproduce as follows:

> A permanency plan was prepared with the same permanency goals for each parent; obtain suitable housing; supervised visitations with the [Child] together with visit coaching; and successful completion of drug and alcohol treatment followed by clean drug tests. At permanency review hearings in November, 2023, February, 2024, and May, 2024, the Court found no compliance or minimal compliance with the permanency plan by both parents.
>
> To date, neither parent has obtained suitable housing. In fact they have gone backward in terms of housing. Originally they shared a trailer home with the Child. They have since split up, with Mother staying at multiple addresses with various people, and Father moving in with Mother's mother, [W.B], who he has accused in the past of illegally distributing Suboxone. [The Agency] has ongoing investigations into that household as well, unrelated to [the] Child. Currently neither parent has obtained stable, suitable housing.
>
> The parents have participated in supervised visitation with the Child. Mother's initial participation was inconsistent. For example, she would often cancel a visit at the last minute or fail to appear for a visit. She has since become more consistent, however. Father has consistently attended his visits, scheduling

_____

that given that the communication would not be understandable for her to give me any kind of opinion, I don't see any conflict with that." N.T., 8/19/24, at 5. Because counsel indicated on the record, that Child was too young to articulate a preference as to the outcome of the proceedings, we agree no conflict existed. **See generally In re T.S.,** 192 A.3d 1080, 1089-92 (Pa. 2018).

them around his work schedule. The Child shows an attachment to both parents, becoming upset when the visits end, particularly visits with Father.

Neither parent has successfully completed drug and alcohol treatment. Both parents have done intake appointments and have begun treatment at numerous facilities, but never fully completed treatment. More troubling, both parents continue to test positive for illegal drugs. Mother has tested positive for cocaine, Suboxone, fentanyl, and THC. She also refused to take a drug test on one or more occasions. Father initially was testing positive for cocaine, Suboxone, and THC. Father has not tested positive for any substances other than THC since March 2024, though he admitted using cocaine in June 2024. Father does not have a medical marijuana card, however, so his ongoing use of the drug is illegal. Most recently, Father chose to discontinue his treatment at Family Acts in July 2024, even after he knew [the Agency] filed [the termination] petition, because he wanted to spend his money paying for his Xbox gaming system and other bills.

The Child is very happy in the pre-adoptive home of her paternal aunt. She has no medical issues, and requires no special counseling or therapy. There are no other children in the pre-adoptive home. It is understood that if the [Paternal Aunt was to] adopt the Child, the Child will still maintain contact with Father.

The attorney for the Child, who also serves as the [GAL], reported that the Child is doing well in the pre-adoptive home and [the GAL] recommends to the Court that the Court grant the petition so that the Child may be adopted[.]

Findings of Fact and Conclusions of Law, 8/21/24, at 2-5 (formatting altered).

That same day the court entered its order terminating the parental rights of Mother and Father. Father and Mother timely filed these appeals. We will address Father's appeal first. Father presents the following issue for our review:

> 1. Whether the [Orphans'] Court erred when it found that the evidence presented by the Agency clearly and convincingly established grounds for involuntary

- 4 -

termination of parental rights under 23 Pa.C.S.
§2511(a)(5)?

Father's Brief at 5 (underline and excess capitalization omitted).

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving . . . the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports the trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the

court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); *see also T.S.M.*, 71 A.3d at 267.

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child . . . .

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); *see also Interest of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022).

Instantly, the orphans' court terminated Father's rights under Section 2511(a)(5) and (b). Subsection 2511(a)(5) provides:

> **(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(5).

In order to satisfy Section 2511(a)(5), this Court has stated that the moving party must satisfy the following five factors:

> (1) The child has been removed from parental care for at least six months; (2) the conditions which led to the child's removal or placement continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement with a reasonable time; (4) the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within a reasonable time; and (5) termination of parental rights would best serve the needs and welfare of the child.

*In re B.C.*, 36 A.3d 601, 607 (Pa. Super. 2012) (citation omitted). Regarding the final factor, we have clarified that the orphans' court "must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial." *In re P.A.B.*, 570 A.2d 522, 525 (Pa. Super. 1990). Stated differently, the Agency, when seeking termination under Section 2511(a)(5), "must prove that the family ties either do not exist or no longer help but rather hinder the children." *Id.*

Our review supports the orphans' court factual findings and credibility determinations. Based on its factual findings, the orphans' court made the following conclusions of law:

> The Child has been removed from the custody of the parents by the Court for a period in excess of six months. The illegal drug use by the parents and lack of suitable housing by both parents are the conditions that led to the removal of the Child from the parents, and those conditions continue to exist. The parents cannot or will not remedy those conditions within a reasonable time. The services or assistance reasonably available to the parents are not likely to remedy the conditions which led to removal of the Child within a reasonable time, as demonstrated by the total lack of progress over a period of time in excess of 12 months.
>
> The Child's parental bond with her parents is not necessary and beneficial to the Child. That is to say that maintaining that bond does not serve the Child's developmental, physical and emotional needs and welfare.
>
> A qualified pre-adoptive family has been identified by [the Agency], and the Child is happy in the pre-adoptive home and has bonded with the foster parents.
>
> The [pre-adoptive] home meets the Child's developmental, physical and emotional needs, including her intangible needs of love, comfort, security, safety, and stability.

Findings of Fact and Conclusions of Law, 8/21/24, at 5-6 (formatting altered).

Following our review, we discern no abuse of discretion or error of law. The testimony presented by the Agency establishes that neither Father or Mother has suitable housing in which to raise a child and has never completed drug treatment. The failure to obtain either goal renders any bond they have with their daughter neither necessary nor beneficial to the Child's best interests.

In arguing to the contrary, Father asserts that the orphans' court "failed to take into account [Father's] financial inability to continue attending drug and alcohol treatment as well as the attachment between parent and child." Father's Brief at 8.

Father first argues that his parental rights "should not be terminated simply because he is financially unable to pay for services required by" the Agency. *Id.* at 10. Father contends that "[i]f given additional time and financial assistance, [he] likely would been able to remedy said conditions that led to the initial placement" of the Child. *Id.* at 10-11.

Father next asserts that a "special bond" had developed between himself and the Child. *Id.* at 11. In a one-sentence argument, unsupported by case authority, Father states that "[t]his bond was not thoroughly explored by the [orphans'] court in order to determine the extent of said parent-child bond." *Id.* at 11.

In its Rule 1925(a) opinion, the orphans' court concluded that the record refutes Father's claim of financial inability and that any bond the Child might share with Father must yield to the Child's best interests. The court explained:

> Father's concise statement asserts that Father was unable to complete treatment because he was financially unable to do so.
>
> That is not supported by the record in this case. Father testified that in July 2024 he voluntarily quit his outpatient treatment at Family Acts because he was having difficulty paying all of his bills, including the finance payment on his Xbox gaming system. Father has full-time employment and he conceded that he could have continued to pay Family Acts, but chose not to continue. Family Acts even offered to reduce Father's cost to $50 per visit, but he chose not to take advantage of that offer. Of

course, as a result Family Acts discharged Father, once again, unsuccessfully.

The [GAL] provided her opinion at the hearing that neither parent is able to take care of their own needs, let alone the needs of a young child. Their drug abuse continues unabated after a full year (plus three months, counting the diversion program) in which to complete drug treatment. Their housing situation has deteriorated, not improved.

[The orphans' court] concluded that in the final analysis the parental bond that [the Child] has with her parents is not necessary or beneficial, because the bond does not serve her developmental, physical and emotional needs and welfare. To expand on that, it is clear that the [Child] enjoys her visits with her parents, and she is sad when the visits end. But the fact that the bond exists is not the end of the analysis. As the [GAL] stated—the parents cannot take care of their own needs and welfare. Both use illegal drugs and cannot stop. Neither has suitable housing for a child. They cannot meet the needs of their child. The foster family does meet those needs and welfare.

[The] Child has waited over a year for one or both parents to pull themselves together and become a responsible parent. Neither one has done so, and it is not clear whether either of them has really made a sincere effort or is just going through the motions.

Orphans' Court Opinion, 10/1/24, 4-6.

We are bound by the orphan's court's credibility determinations because they are supported by the record. *T.S.M.*, *supra*. The court found as fact that Father chose not to continue his drug treatment, not that he could not afford it. Father's argument regarding the bond he shares with the Child is undeveloped. Thus, we need not consider it further. *See* Pa.R.A.P. 2119 (outlining requirements for "Argument" section of an appellate brief).

In sum, Father's claim that the Agency's petition was premature lacks merit. We discern no error of law or abuse of discretion in the orphans' court's decision to terminate Father's rights under Section 2511(a)(5).

We turn next to Section 2511(b), the second part of the bifurcated analysis in termination of parental rights cases. Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b). Here, Father has not challenged the orphans' court's treatment of this subsection. Thus, any claim under this subsection is waived. *In re J.T.M.*, 193 A.3d 403, 408 n.5.

We now address Mother's appeal. Mother presents the following issue:

> Did the [orphans'] court abuse its discretion by showing a manifest unreasonableness in not accounting for [Mother's] continued efforts to rid herself of her addiction to controlled substances when the court terminated [Mother's] parental rights[?]

Mother's Brief at 8.

Instantly, the orphans' court terminated Mother's rights under Section 2511(a)(5) and (b). We begin with our analysis of Section 2511(a)(5), incorporating our standard of review and factors necessary to establish this subsection as described above in our analysis of Father's appeal. As noted above, the orphans' court first determined that the Child had been removed

- 11 -

from Mother's care for a period in excess of six months. The court next concluded that the conditions that led to the Child's removal continue to exist and that Mother, like Father, could not or would not remedy the conditions that led to the Child's removal within a reasonable period of time, that the services available to her were not likely to remedy the conditions and that Mother's bond with the Child was not necessary and beneficial to the Child.

In its Rule 1925(a) opinion, the orphans' court expanded on its reasoning regarding substance abuse by both parents:

> The [Child] was placed on August 19, 2023 when she was just shy of her fourth birthday. The primary reason for her placement was her parents' ongoing drug use, although housing was a secondary concern. It is worth noting that [the Agency] had attempted a diversionary program through Justice Works for both parents in May 2023, prior to actually opening a case. The Justice Works Family Resource Specialist testified that the parents showed limited cooperation and were sometimes impossible to reach by phone, and they continued to test positive for suboxone, cocaine, and marijuana. After three months, it was clear that the diversionary program was not having any success and so the safety plan was implemented in August and the [Child] was removed from her parents' care.
>
> From August 2023 through March 2024 both parents continued to test positive for cocaine and marijuana and [Mother] tested positive for suboxone. Since March, Father has consistently tested positive for marijuana, for which he does not have a card, and has admitted using cocaine. Mother has continued to test positive for suboxone, fentanyl, and marijuana. Mother has also refused a number of drug tests including drug tests offered shortly before the termination hearing.
>
> Both parents have begun treatment on multiple occasions during the year the [Child] was placed, but neither has ever successfully completed treatment.

Orphans' Court Opinion, 10/1/24, 3-4.

On appeal, Mother argues the orphans' court abused its discretion in terminating her parental rights under Section 2511(a)(5) because "the court did not account for [Mother's] repeated attempts to escape her drug habit as well as the difficult nature of stopping the abuse of illicit substances." Mother's Brief at 12.

In support of her claim, Mother acknowledges our case law which holds "[a] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities," and that this Court "cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claim of progress and hope for the future." Mother's Brief at 12 (quoting *In re Adoption of S.D.S.*, 328 A.3d 521, at **9 (Pa. Super. 2024) (non-precedential decision)). Mother notes that in *S.D.S.*, four of the mother's five children at issue had been in placement for roughly two and a half years and the fact that the mother had received services for nearly three years without success established that she was unlikely to remedy the conditions which led to removal within a reasonable period of time. *Id.* In contrast, in this case only one year has elapsed, and Mother testified at the termination hearing that she would be back in a rehabilitation program as soon as her insurance was approved. Mother's Brief at 13 (citing N.T., 7/15/24, at 72).

In short, Mother asserts this Court has previously permitted longer periods of time for a parent to remedy a drug addiction and she is willing to

reengage in rehabilitation efforts to overcome her addiction. Mother's Brief at 15.

However, Mother's argument fails to appreciate the standard of review we must apply to termination cases. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record. *See T.S.M.*, 71 A.3d at 267 (citation omitted). This is true even if the record could support an opposite result. *See id.*

Our review of the record supports the orphans' court's decision and refutes Mother's arguments. As cited above, the orphans' court expressed doubt that Mother has put forth a sincere effort to seek drug treatment or was just "going through the motions." Moreover, in *S.D.S.*, as Mother concedes, this Court affirmed the termination of the mother's parental rights pursuant to Section 2511(a)(2), which has different requirements to be met in order to establish a basis for termination. Thus, we affirm the orphans' court's decree terminating Mother's parental rights pursuant to Section 2511(a)(5).

We turn next to Section 2511(b), the second part of the bifurcated analysis required in termination cases. Like Father, Mother does not challenge the orphans' court treatment of this subsection. Thus, we need not consider it further. *J.T.M*, *supra*.

In sum, we hold that the orphans' court did not abuse its discretion or commit an error of law in terminating Father's and Mother's parental rights pursuant to Section 2511 of the Adoption Act.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/07/2025